UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| In Re Subpoena in | : | |
| | : | |
| **UNITED STATES OF AMERICA** | : | |
| | : | |
| v. | : | **Misc. No. 07-mc-291 (RJL)** |
| | : | |
| **CARLTON EDWARDS** | : | |

## CARLTON EDWARDS MEMORADUM OF LAW IN OPPOSITION TO MOTION TO QUASH AND IN SUPPORT OF CROSS-MOTION FOR REMAND TO D.C. SUPERIOR COURT

This litigation has arisen suddenly in the midst of Carlton Edwards' criminal prosecution in Superior Court for the District of Columbia (D.C. Superior Court). The United States elected to prosecute Mr. Edwards locally, but when Mr. Edwards sought to obtain information material to his defense pursuant to a court-authorized subpoena, one of its component agencies, the Court Services and Offender Supervision Agency (CSOSA) attempted to remove this one aspect of Mr. Edwards' case to this Court while his criminal prosecution in D.C. Superior Court continues. Removal itself was improper, and CSOSA's motion should be remanded to D.C. Superior Court. Alternatively because CSOSA's purported federal defenses to Mr. Edwards subpoena have no merit, CSOSA's motion to quash must be denied.

## FACTUAL BACKGROUND[1]

The United States, represented by the United States Attorney's Office for the District of Columbia, initiated criminal proceedings against Mr. Edwards in 2006, when it sought and obtained an indictment against him for first degree murder. The

---

[1] Because Mr. Edwards' criminal case is still pending, time periods for briefing have been constricted. Undersigned counsel have made every effort to get a handle on the facts, and to be as accurate as possible in their presentation in this pleading.

government claimed that Mr. Edwards was responsible for the shooting death of Kenneth Nelson on October 11, 2005.

Mr. Edwards eventually learned that the government's case will include testimony from one key witness – Marion Sweat.  Investigation revealed that this witness was incarcerated at the time he started cooperating with the government, was released soon after, and is now under supervision in the District of Columbia by CSOSA.  Investigation has also revealed that Mr. Sweat likely has performed poorly under supervision, may have a substantial drug problems, and thus likely has a strong motive to curry favor with the government to prevent his return to incarceration as a result of his poor performance under supervision.

Despite the fact that information concerning Mr. Sweat's motive to curry favor with the government should have been disclosed pursuant to the defense request for information under *Brady v. Maryland*, 373 U.S. 83 (1963), it was not.  Having not received any such information from the government pursuant to *Brady*, on June 20, 2007, Mr. Edwards moved pursuant to D.C. Sup. Ct. R. 17(c) and *Brown v. United States*, 567 A.2d 426 (D.C. 1989) (requiring leave of court to obtain medical–type information in a criminal case), for a *subpoena duces tecum* to Court Services and Offender Supervision Agency for the District of Columbia (CSOSA)[2] requiring production of Mr. Sweat's supervision files.  In the motion counsel explained the relevance and materiality of the requested records.  On July 10, 2007, the D.C. Superior Court Judge presiding over Mr. Edwards' murder trial, the Honorable Eric Christian, granted the motion and signed the subpoena.

---

[2] CSOSA, although part of the United States government, was created by the National Capital Revitalization and Self-Government Act of 1997 to serve the District of Columbia. *See* D.C. Code § 24-133.

On July 10, 2007, trial counsel immediately sought to serve the subpoena on CSOSA. CSOSA informed trial counsel that CSOSA as a federal agency was shielded from any obligation to comply with a D.C. Superior Court subpoena by its "Touhy" regulations, 28 C.F.R. § 802.24 et seq. CSOSA also indicated that it was precluded under the Federal Privacy Act from releasing records without a signed release. CSOSA also indicated that it would be removing the matter to federal court, although it did accept service of the Superior Court subpoena.

On July 13, 2007, CSOSA filed a notice of removal and served that notice on the Public Defender Service on July 16, 2007. On July 16, 2007, CSOSA filed a motion to quash the subpoena, which it also served on trial counsel by mail. Trial counsel received the motion to quash on July 18, 2007.

In the meantime, Mr. Edwards' case proceeded toward trial. On July 19, 2007, a jury was selected. After jury selection, when informed of CSOSA's refusal to comply with his subpoena, Superior Court Judge Christian ordered counsel for CSOSA to appear to explain why an arm of the United States – the same government that had initiated criminal proceedings in Superior Court – was nonetheless refusing to accede to the jurisdiction of that same court.

On July 20, 2007, counsel for CSOSA indicated that their standard response to all Superior Court subpoenas was to refuse to honor them and to remove them to federal court in order to file a motion to quash.

Also on July 20, 2007, with the jury in this murder trial having already been selected, Judge Christian directed Mr. Edwards' counsel to litigate the subpoena matter in federal court on an emergency basis, indicating that the federal court might be willing to

enforce the subpoena in time to preserve the fairness of the trial and to protect Mr.
Edwards' compulsory process rights. Pursuant to Judge Christian's directive, counsel for
Mr. Edwards hereby files this emergency opposition to the motion to quash as well as
motion for summary remand of this subpoena matter to the Superior Court for the District
of Columbia.

## ARGUMENT

## I.      REMOVAL WAS IMPROPER AND REMAND IS APPROPRIATE.

Because of the unique nature of the District of Columbia, its criminal justice
system relies heavily on federal actors: the Capitol Police, the National Park Police, the
Federal Bureau of Investigation, the Drug Enforcement Agency, and CSOSA to name a
few. These actors regularly assist the United States Attorney for the District of
Columbia, the local prosecutor for the District. But there are many occasions when these
federal actors have information in their possession that may assist an individual
defendant. Yet CSOSA's novel theory of removal would permit all of these federal actors
to remove bits of local criminal cases to federal court as an everyday occurrence. This
would significantly impede the work of D.C. Superior Court and impose a huge burden
on the federal court.

Such a radical reconfiguration of the prosecution of criminal cases in the District
is not supported by the removal statutes or the one case to which CSOSA misguidedly
cites. Thus CSOSA cannot sustain its burden to demonstrate that removal in this instance
was proper, *Walker v. Waller*, 267 F.Supp.2d 31, 32 (D.D.C. 2003) (party seeking
removal bears burden), and therefore remand is required. *Johnson-Brown v. 2200 M St.*

*LLC*, 257 F.Supp.2d 175, 180 (D.D.C. 2003) (if the moving party "cannot meet [its] burden then the court must remand the case").

CSOSA asserts that removal is warranted under the removal statutes but in fact, the plain language of 28 U.S.C. §1442(a) actually prohibits removal in this case. 28 U.S.C. §1442(a) only allows for removal where the United States, or any United States agency or officer, is the defendant in a civil suit or criminal prosecution in state court. Section 1442(a) states that "[a] civil action or criminal prosecution *commenced in a State court against* [*inter alia*, a federal agency] may be removed by [the federal agency] to the district court of the United States for the district and division embracing the place wherein it is pending."[3] (emphasis added). *See, e.g., Mesa v. California*, 489 U.S. 121, 136 (1989) (describing §1442(a) as "seeking to do nothing more than grant district court jurisdiction over cases in which a federal officer is a defendant"). Here, we have neither a civil action nor a criminal prosecution "commenced in a State court against" a federal agency. Instead, the case that was "commenced in a State court" is a criminal prosecution of a private citizen, and §1442(a) accordingly does not apply. "[T]he present language of § 1442(a) cannot be broadened by fair construction to give it the meaning which the Government seeks." *Mesa*, 489 U.S. at 139.

The inapplicability of the plain language of § 1442(a) to this case illustrates that this is simply not the kind of case the statute was designed to reach: section 1442 was drafted to protect federal officials from hostile state forums. The Supreme Court has said as much: "Obviously, the removal provision [at 28 U.S.C. § 1442(a)(1)] was an attempt to protect federal officers from interference by hostile state courts." *Willingham v.*

---

[3] It is a "basic principle of statutory construction that words are ordinarily to be given their 'plain meaning.'" *Palestine Info. Office v. Shultz*, 853 F.2d 932, 938 (D.C. Cir. 1988).

*Morgan*, 395 U.S. 402, 405 (1969); *see also Arizona v. Manypenny*, 451 U.S. 232, 241-

42 (1981) ("The act of removal [pursuant to § 1442] permits a trial . . . free from local

interests or prejudice."); *Freiberg v. Swinerton & Walberg Prop. Servs., Inc.*, 245 F.

Supp.2d 1144, 1152 n.6 (D. Colo. 2002) (citing basis of § 1442 "in a mistrust of states

and state courts to protect federal interests"); *Ryan v. Dow Chem. Co.*, 781 F. Supp. 934,

941 (E.D.N.Y. 1992) (concern underlying § 1442  is "that state governments hostile to

duly enacted federal laws would be able to frustrate the implementation of those laws by

bringing (or allowing to be brought) civil or criminal actions in state court against the

federal officials responsible for their implementation").  A statute designed to protect

federal officials from biased local forums is not applicable to a case like this one where

the United States (of which CSOSA is concededly a part, *see* Caption to Motion of to

Quash designating plaintiff as "United States") regularly conducts prosecutions in D.C.

courts and embraced the nonfederal D.C. forum in this instance by filing its case against

Mr. Edwards there.

 Likewise CSOSA finds no support in the one case that it cites, *Brown &*

*Williamson Tobacco Corp., v. Williams*, 62 F.3d 408, 412-15 (D.C. Cir. 1995).  To be

sure, in that case (and there are others like it, *see* n. 5 *infra*), the Court expansively read

the statute, despite recognizing that "[i]t is certainly true that the language of the removal

statute ostensibly supports" the argument that a subpoena enforcement cannot give rise to

removal.  62 F.3d at 413.  But the court based its ultimate decision to authorize removal

on the entirely distinguishable situation where a third party federal legislator was

permitted to remove his challenge to a subpoena issued in a state civil suit between

private litigants.[4]  Under such circumstances, removal indisputably served the purpose of the statute as described above – not so here where the United States is a party to the case, elected to prosecute in one forum, and now seeks to evade that same forum's authority over a United States agent.

The relevance of *Brown and Williamson* is further weakened by the distinctions between state courts and D.C. Superior Court, and by distinctions between a traditional federal agency and CSOSA.  The subpoena in *Brown and Williamson* was issued by a Kentucky state court.  62 F.3d at 411.  The District is a "state" court for the purposes of removal, 28 U.S.C. § 1451, but the District is "'constitutionally distinct from the States.'" *Dist. of Columbia Common Cause v. Dist. of Columbia*, 858 F.2d 1, 7 (D.C. Cir. 1988) (citing *Palmore v. United States*, 411 U.S. 389, 395 (1973)).  For example, "although prisoners sentenced by state courts may resort to federal habeas corpus after exhaustion of their state remedies, a District of Columbia prisoner has no recourse to a federal judicial forum unless the local remedy is 'inadequate or ineffective to test the legality of his detention.'" *Garris v. Lindsay*, 794 F.2d 722, 726 (D.C. Cir. 1986) (citing *Swain v. Pressley*, 430 U.S. 372 (1977)).  Indeed, "[t]he measure of '[w]hether the District of Columbia constitutes a 'State or Territory' within the meaning of any particular . . . constitutional provision depends upon the character and aim of the specific provision involved.'" *Adams v. Clinton*, 90 F.Supp.2d 35, 47 n.16 (D.D.C. 2000) (quoting *Dist. of*

---

[4] Similarly, the other cases in which the removal statute is expansively interpreted show nothing more than the availability of removal to a third party official when the United States is not a party and did not elect to litigate in state court. *See, e.g.*, *Houston Bus. Journal, Inc. v. Office of Comptroller of Currency, U.S. Dep't of Treasury*, 86 F.3d 1208 (D.C. Cir. 1996) (suit between private litigants where subpoena issued to third-party federal employee of the O.C.C. ); *Longtin v. United States Dep't of Justice*, No. 06-1302 (D.D.C. Aug. 3, 2006), *aff'd*, Order in No. 06-5223 (D.C. Cir. Aug. 9, 2006) (civil action between private litigant and state entities where subpoena issued to third-party federal employee from United States Attorney's Office); *Ho v. United States*, 374 F.Supp.2d 82 (D.D.C. 2005) (suit between private litigants where subpoena issued to third-party federal employee of D.H.S.).

*Columbia v. Carter*, 409 U.S. 418, 420 (1973)).  The dangers of forcing federal agents to

litigate federal issues in D.C. Superior Court are limited, given that the court is in many

ways a federal entity, created by Congress, funded by the federal government,[5] with a

judiciary appointed by the President[6], and where its criminal cases are almost exclusively

prosecuted by the United States.[7]  In other words, §1442's goal of protecting federal

agents from hostile state courts is not applicable in the unique, quasi-federal context of

D.C. Superior Court, particularly when the United States has chosen to litigate in that

forum to begin with.

Similarly, analogies between CSOSA and the federal agencies referenced in the

government's cases must also fail.  The acronym CSOSA stands for the "Court Services

and Offender Supervision Agency *for the District of Columbia*."  D.C. Code § 24-133(a)

(emphasis added).  It was created pursuant to the National Capital Revitalization and

Self-Government Improvement Act of 1997 for the District of Columbia to "provide

supervision, through qualified supervision officers, for offenders on probation, parole,

and supervised release pursuant to the District of Columbia Official Code."  D.C. Code §

24-133(c)(1).  And in carrying out these duties, CSOSA is obligated by statute to "*carry*

*out the conditions of release imposed by the Superior Court* (including conditions that

probationers undergo training, education, therapy, counseling, drug testing, or drug

---

[5] The D.C. Superior Court was established by the District of Columbia Court Reform and Criminal
Procedure Act of 1970, 84 Stat. 473 (1970), "pursuant to article I of the Constitution."  *United States v.
Harris*, 314 F.3d 608, 610 (D.C. Cir. 2002.)  "Art. I, s 8, cl. 17, of the Constitution provides that Congress
shall have power '(t)o exercise exclusive Legislation in all Cases whatsoever, over' the District of
Columbia . . . [and] Congress '. . . may vest and distribute the judicial authority in and among courts and
magistrates, and regulate judicial proceedings before them, as it may think fit, so long as it does not
contravene any provision of the constitution of the United States.'"  *Palmore v. United States*, 411 U.S.
389, 398 (1973).

[6] Pursuant to D.C. Code § 1-204.33, the President nominates "and by and with the advice and consent of
the Senate . . . appoint[s] all the judges of the District of Columbia courts."

[7] D.C. Code § 23-101(c) provides that aside from the small number of crimes prosecuted by the Attorney
General's office in D.C. Superior Court, all criminal prosecutions "shall be conducted in the name of the
United States by the United States Attorney for the District of Columbia. . . ."

treatment), and shall make such reports to the Superior Court with respect to an individual on probation *as the Superior Court may require*." *Id.* at § 24-133(c)(3) (emphasis added). Unlike the third-party federal agents dragged into state court in the archetypal § 1442 case, CSOSA is being asked to respond to the subpoena of a court to which it is statutorily required to make reports. Again, CSOSA is not the type of entity the removal statute is designed to protect and D.C. Superior Court is not the type of forum the removal statute allows a federal agency to avoid.

Under the circumstances, CSOSA's attempt to remove its challenge to the D.C. Superior Court subpoena issued in the United States criminal prosecution of Mr. Edwards smacks of forum-shopping. Forum shopping, particularly when conducted piecemeal, is offensive to justice and principles of fairness. *See, e.g.,* Richard Maloy, *Forum Shopping? What's Wrong with That?,* 24 QLR 25, 28 (2005) ("forum shopping is the taking of an unfair advantage of a party in litigation"); *Ohio v. Doe,* 433 F.3d 502, 507, 508 (6th Cir. 2006) ("belated efforts to remove the subpoena enforcement action offends the spirit of the removal acts, which do not contemplate that a party may experiment on [her] case in state court, and, upon an adverse decision, then transfer it to Federal court. Such piecemeal litigation offends the spirit of the removal statutes and undermines judicial economy.") (citing *Rosenthal v. Coates,* 148 U.S. 142, 147 (1983), internal quotations marks and citations omitted); *Hoffman v. Hunt,* 845 F. Supp. 340, 351 (W.D.N.C. 1994) (finding it "particularly intolerable where the piecemeal litigation would likely occur within the context of [a] criminal prosecution").

Moreover, efforts to secure a new forum for the subpoena enforcement question are particularly intolerable when they represent an attempt to delay the

underlying proceeding or take advantage of defense counsel's unfamiliarity with the second forum. As one scholar has noted in regard to § 1442(a), "[u]nfortunately, federal officials are removing other cases . . . in order to gain a tactical advantage over local prosecutors." Kenneth Rosenblatt, *Removal of Criminal Prosecutions of Federal Officials: Returning to the Original Intent of Congress*, 29 Santa Clara L. Rev. 21, 22, 24 (Winter 1989) (describing "potential for abuse" posed by removal statute, including risk that "[s]tate sovereignty is invaded to satisfy nebulous, or even non-existent, federal interests"). Here of course the local prosecutors, themselves federal actors, suffer no prejudice from removal – unlike defense counsel, in this case the Public Defender Service for the District of Columbia whose trial lawyers practice exclusively in D.C. Superior Court.

Removal provisions are not intended to give party moving for removal "a chance to escape from what had turned out to be an unfavorable state forum" or an "undeserved tactical advantage that he would have if he could wait and see how he was faring in state court before deciding whether to remove the case to another court system" *Wilson v. Intercollegiate (Big Ten) Conference Athletic Ass'n*, 668 F.2d 962, 965 (7th Cir. 1982); *see also Woburn Five Cents Sav. Bank v. Robert M. Hicks, Inc.*, 930 F.2d 965, 972 (1st Cir. 1991) (citing need pursuant to 28 U.S.C. § 1446 to "prevent delay and avoid tactical removals"). Neither should removal provisions be applied in a manner that runs the risk that "[l]ocal prosecutors unfamiliar with federal court may lose worthy cases." Rosenblatt, 29 Santa Clara L. Rev. at 23, 23 n.8, 25 (noting that "[m]ost local prosecutors have never appeared in federal court [and [t]his factor can hardly be underestimated. Federal and state criminal procedure can be radically different, [and] [n]o attorney wishes

to represent a client in a forum in which he has never practiced and with which he is completely unfamiliar."). Again the same concerns attend here, but to defense counsel.

Especially under these circumstances, "[a]voidance of forum shopping heavily favors abstention." *In re Compact Disc Minimum Advertised Price Antitrust Lit.*, 2006 WL 2819811, *24 (D. Me. 2006). It is well established that federal courts should ordinarily abstain from interfering with state court criminal prosecutions. *Younger v. Harris*, 401 U.S. 37 (1971). In addition, "[t]he *Younger* abstention policy is best suited to cases where federal plaintiffs are trying to attack state enforcement procedures which have been directly applied to them." *Worldwide Moving & Storage, Inc. v. District of Columbia*, 445 F.3d 422, 436 n.6 (D.C. Cir. 2006) (internal citation and quotations omitted). Recognizing that removal is not appropriate here will prevent forum shopping and will be responsive to the point that "[b]ecause the regulation of crime is pre-eminently a matter for the States, [the Supreme Court has] identified a strong judicial policy against federal interference with state criminal proceedings." *Arizona,* 451 U.S. at 243 (citations and internal quotations omitted).

In short, CSOSA's desire to remove its challenge to a D.C. Superior Court subpoena from that court to federal court has no support in the statutory language, the case law, the policies underlying the federal removal statute, or the policies governing federal-state court relations and disfavoring forum-shopping. In addition, removal pursuant to 28 U.S.C. §1442 is permissible only when the federal agency or officer has alleged a "colorable federal defense." *Mesa*, 489 U.S. at 133-34 ("an unbroken line of this Court's decisions extending back nearly a century and a quarter have understood all the various incarnations of the federal officer removal statute to require the averment of a

federal defense."); *Brown & Williamson*, 62 F.3d at 413 (citing "colorable federal defense" requirement for removal).  As explained below, CSOSA has no defense on the merits to the D.C. Superior Court subpoena issued in the United States' criminal case against Mr. Edwards.  *See* Parts II and III *infra*.

## II.    CSOSA HAS NO LEGITIMATE FEDERAL DEFENSE TO RESIST DISCLOSURE OF THE REQUESTED RECORDS TO MR. EDWARDS TO USE IN HIS DEFENSE AGAINST A CRIMINAL PROSECUTION BY THE UNITED STATES.

CSOSA has no legitimate federal defense to resist disclosure of Mr. Sweat's records to Mr. Edwards to use in his defense at his murder trial.  Thus, removal is additionally improper, but even if the Court retains jurisdiction over CSOSA's challenge to Mr. Jenning's subpoena for information critical to his defense in his criminal prosecution by the United States, this Court must deny CSOSA's Motion to Quash.

Although it is difficult to decipher exactly what the grounds are for CSOSA's motion to quash, it appears that CSOSA is arguing that (1) because it is a federal agency with "*Touhy*" regulations, 28 C.F.R. § 802.24 et seq., it has an affirmative privilege against disclosure of the information sought by Mr. Edwards, and (2) sovereign immunity bars the D.C. Superior Court – and derivatively this Court – from enforcing Mr. Edwards's subpoena.  CSOSA's arguments cannot withstand the most minimal scrutiny.

### A. CSOSA's *Touhy* regulations provide no privilege from disclosure.

CSOSA asserts that its *Touhy* regulations "prohibit CSOSA employees from providing the testimony and information sought."  Motion to Quash at 3; *see also id.* at 1 ("CSOSA regulations preclude testimony on or production of the information requested

by the subpoena").[8]  But CSOSA's *Touhy* regulations, like the *Touhy* regulations

promulgated by numerous other federal agencies, simply set forth internal procedures for

handling requests for information in connection with a proceeding to which the agency is

not a party.  These regulations provide no substantive protection from orders of

production; they simply establish internal procedures for federal agencies to follow to

determine whether and how to respond to requests for disclosure of information

The case from which *Touhy*-type regulations derive their name, *Touhy v. Ragen*,

340 U.S. 462 (1951), clarifies their limited objective.  *Touhy* involved a subordinate

federal actor, a special agent with the Federal Bureau of Investigation, who resisted a

subpoena in a civil case in federal court at the direction of his superiors.  The Court held

the agent in contempt, and the agent appealed.  The Supreme Court granted review and

held that any contempt action should have been brought against the Attorney General.

340 U.S. at 467.  The Court expressly did not "consider the ultimate reach of the

Attorney General to refuse to produce at a court's order papers within its possession."

The Court explained that "the case as we understand it raises no question as to the power

of the Attorney General himself to make such a refusal" because "the Attorney General

was not before the trial court."  *Id.*[9]  Thus, the Court's only holding in *Touhy* was that the

Attorney General "can validly withdraw from his subordinates the power to release

department papers," so as to promote uniformity in determining when the government

---

[8] CSOSA frames its arguments as if Mr. Edwards is seeking testimony from one of its employees.  He is not.  As his subpoena clearly states, Gov't Ex. 1, he seeks only documents, namely CSOSA's file on Mr. Sweat.

[9] *See also id.* at 420 ("the constitutionality of the Attorney General's exercise of a determinative power as to whether or on what conditions or subject to what disadvantages to the Government he may refuse to produce government papers under his charge must await a factual situation that requires a ruling."); *id.* at 472 (emphasizing the Court's "very narrow ruling" and explicitly warning that "*this case cannot afford a basis for future suggestion that the Attorney General can forbid every subordinate who is capable of being served by process from producing relevant documents.*") (Frankfurter J., concurring).

will comply with a subpoena and when it will resist a request for disclosure of
information. *Id.*

In the fifty years since *Touhy*, courts have honored its "very narrow ruling" and
repeatedly observed that *Touhy*-type regulations do not create an independent privilege
authorizing federal agencies to withhold information from disclosure. *See, e.g.,*
*Alexander v. United States,* 186 F.R.D. 66, 70 (D.C. Cir. 1998); *Exxon Shipping Co. v.*
*United States Dep't of Interior,* 34 F.3d 774, 780 (9th Cir. 1994); *F.A.C. Inc., v.*
*Cooperativa De Seguros de Vida,* 188 F.R.D. 181, 185-86 (D. P.R. 1999); *United States*
*v. Peitz,* 2002 WL 453601, *3 (N.D.Ill. 2002); *cf. In re Cys,* 362 A.2d 726, 728 n.3 (D.C.
1976) (noting that Assistant United States Attorney cited with criminal contempt by a
D.C. Superior Court Judge for failure to disclose information had not sought to obtain
approval from his superiors as mandated by Department of Justice *Touhy* regulations but
instead "chose to stand on a refusal to produce, possibly interpreting the regulations as an
absolute prohibition against release" of the requested information). The D.C. Court of
Appeals' decision in *Houston Business Journal v. Office of Comptroller of Currency*, 86
F.3d 1208 (D.C. Cir. 1996), the primary case upon which CSOSA relies, is not to the
contrary. Rather in that case, the Court simply held that "a court cannot enforce a
subpoena against an employee of the federal government agency when the agency has a
validly enacted regulation . . . that withdraws from employees the power to produce
documents." *Id.* at 1212. Instead, any enforcement action must be taken against the head
of the agency. *Id.*

Moreover, since the Supreme Court's decision in *Touhy*, Congress has made
expressly clear that *Touhy* regulations provide federal agencies no substantive protection

from their obligations to disclose information. Federal *Touhy* regulations – CSOSA's included, *see* 28 C.F.R. 802.24 et seq. – are authorized by the federal "Housekeeping Statute," 5 U.S.C. § 301, which simply provides that a "head of an Executive department . . . may prescribe regulations for the government of his department, conduct of his employees, the distribution and performance of its business, and the custody, use, and preservation of its records, papers and property." Of critical importance here, in 1958, Congress amended the Housekeeping Statute and added the following caveat: "*This section does not authorize withholding of information from the public or limiting the availability of records to the public*." 5 U.S.C. § 301 (emphasis added).

Thus, even if there were some provision in CSOSA's *Touhy* regulations that purported to preclude disclosure of records, of the nature Mr. Edwards seeks, to defendants like Mr. Edwards, they would be invalid. *See United States ex rel. O'Keefe v. McDonnell Douglas Corp.*, 132 F.3d 1252, 1255-56 (8th Cir. 1998) ("Since 1958, it has been clear that the Housekeeping Statute 'cannot be construed to establish authority in the executive departments to determine whether certain papers and records are privileged.'") (quoting *NLRB v. Capitol Fish Co.*, 294 F.2d 868, 875 (5th Cir. 1961)); *see also Chrysler Corp. v. Brown*, 441 U.S. 281, 310 (1979) (rejecting argument that Housekeeping Statute provides statutory authority for substantive regulations of any kind, and condemning attempts to construe statute as such as "misuse" which "twisted the statute"); Gregory S. Coleman, Note, *Touhy and the Housekeeping Privilege: Dead but Not Buried?*" 70 Tex. L.Rev. 685, 689 & n.20 (1992) ("The proposition for which *Touhy* is often cited – that a government may withhold documents or testimony at its discretion – simply is not good law and hasn't been since 1958").

But there is no provision in CSOSA's regulations that purports to confer substantive protection from disclosure on that agency. 28 C.F.R. § 802.24 defines the purpose of CSOSA's regulations – *i.e.,* to "state the procedures" for CSOSA to "follow in response to a demand from a Federal, state or local administrative body for the production and disclosure of material in connection with a proceeding to which the Agency is not a party." 28 C.F.R. § 802.25 provides definitions. 28 C.F.R. § 802.26 specifies procedures and requires that "if, in connection with a proceeding to which the Agency is not a party, an employee receives a demand from a court . . . for material contained in the Agency's files, . . . the employee must: (a) immediately notify the Office of the General Counsel and forward the demand to the General Counsel if the demand pertains to CSOSA." Finally, 28 C.F.R. § 802.27 states that "the General Counsel is responsible for determining if CSOSA should comply or not comply with the demand" for disclosure of information, and then in subsection (a) gives policy reasons for this centralization of authority; in subsection (b) and (c) explains logistics; and in subsection (d) lists a number of factors which may inform the General Counsel's decision, including "D.C. Statutes and regulations" and "[w]hether disclosure is appropriate under the rules of procedure governing the case or matter in which the demand arose."

Curiously CSOSA cites to 28 C.F.R. § 802.27(a) for the proposition that its "regulations prohibit CSOSA employees from providing the information sought." Motion to Quash at 4. But this subsection of the regulation does nothing of the sort. Rather the only prohibition contained in this section is a prohibition against production of documents or provision of testimony "*without prior authorization* from the General Counsel or Deputy Director." 28 C.F.R. § 802.24 (emphasis added).

Authorization of disclosure, or a reasoned denial therefore, is what Mr. Edwards still awaits, although he has provided CSOSA with sufficient information for it to intelligently review his request on the grounds specified in § 802.27(d). And yet, CSOSA inexplicably asserts that *Mr. Edwards* has failed to comply with its *Touhy* regulations. Motion to Quash at 4; *see also* 3 n. 1. There is nothing in these intra-agency regulations that places any obligation on Mr. Edwards.[10] *See* 28 C.F.R. §§ 802.24-27.

Even assuming an implicit obligation to assist CSOSA to comply with its intra-agency regulations, Mr. Edwards has done everything that he could have to ensure that the decision-makers at CSOSA were apprised of the subpoena and had a meaningful opportunity to determine how to respond to it. To begin with Mr. Edwards sought the requested records via subpoena, a perfectly legitimate means of making a "demand" for records under CSOSA's regulations. *See* 28 C.F.R. § 802.25 (defining a "demand" for records to encompass a subpoena); 28 C.F.R. § 802.26(a) (directing an employee who receives a "demand" for records to forward it to the general counsel's office); 28 C.F.R. § 802.27(d) (delineating a nonexhaustive list of factors that CSOSA "will" consider when determining how to respond to a "demand" for records). This subpoena was not directed to any one employee of CSOSA, but to the agency as a whole. In the subpoena, Mr. Edwards described with specificity the records sought: He sought the supervision records in connection with Marion Sweat, and he served the subpoena on the General Counsel himself.

---

[10] Similarly, these intra-agency regulations make clear that they create no rights for Mr. Edwards. *Cf.* 28 C.F.R. § 802.24(c) ("This part is not intended and does not create and may not be relied upon to create any right or benefit, substantive or procedural, enforceable at law by a party against the United States or specifically CSOSA").

Given Mr. Jenning's efforts outlined above, CSOSA's complaint that "no one has secured authorization under [CSOSA's *Touhy*] regulations for the release of the information sought in the subpoenas" is nonsensical. Motion at 4. Mr. Edwards has properly sought such authorization, but the only reason that he has been unable to "secure" it is because CSOSA has adopted the indefensible position that its *Touhy* regulations provide it with an affirmative privilege from disclosure. Thus, it is CSOSA that has failed to comply with its own *Touhy* regulations. With the information Mr. Edwards has given it, CSOSA has an obligation to make a substantive determination about the propriety of disclosure. And it must do so in accordance with the factors set forth in § 802.27(d) ("the agency will consider factors such as the following"). None of those factors militate against disclosure, and at least two of those factors militate in its favor. *See* 28 C.F.R. § 802.27(d)(4) (D.C. Statutes and regulations) and § 802.27(d)(6) ("rules of procedure governing the case . . . in which the demand arose").

D.C. Code § 11-942 and Rule 17 of the D.C. Rules of Criminal Procedure, provide D.C. Superior Court judges with subpoena power, including *subpoena duces tecum* power. They permit a motion to quash for unreasonable or oppressive subpoenas, but contain no exceptions for federal government agencies. In fact, Rule 17(e)(2) permits nationwide service of process of the subpoena ("at any place in the United States"), and Rule 17(h) prevents subpoenaing witness statements "from the government" except in compliance with Rule 26.2. The fact that the rule contains an exception for *subpoenas ad testificandum* "from the government" strongly supports that the rule allows subpoenas of other types of information "from the government" such as the *subpoena duces tecum* at issue here. In addition, the D.C. Court of Appeals has held, in *Christian v. United States*,

18

394 A.2d 1, 44 (D.C. 1978), that the Federal All Writs Act permits Superior Court judges

to issue writs of mandamus outside of the District to federal actors. This provides a clear

form of authority for Superior Court judges to enforce their subpoenas against recalcitrant

federal actors.

In short, *Touhy* regulations give CSOSA a procedure to follow to make reasoned

and uniform deliberations about demands for information. But they pose no bar to the

enforcement of a subpoena where, as here, CSOSA has been given all the information it

needs to meaningfully deliberate but simply refuses to do so.

**B.    Whatever their application *Touhy* regulations cannot trump a defendant's right to Compulsory Process**

Completely absent from CSOSA's motion is any appreciation that Mr. Edwards

sought these records in the context of a ongoing criminal case, brought by the United

States, as a means of substantiating his defense. It is not at all clear that *Touhy*

regulations apply in the criminal context, and certainly CSOSA, which relies exclusively

on authority from the civil sphere, cites no authority to demonstrate they do.

As a preliminary matter, there is ample authority for the general proposition that

*Touhy* has no application when the United States is a party to the litigation in which the

information is sought. *See Alexander*, 186 F.R.D. at 66 ("the Supreme Court's holding in

*Touhy* is applicable only in cases where the United States is not a party to the original

legal proceeding") *accord Louisiana v. Sparks*, 978 F.2d 226, 234 (5th Cir. 1992); *Boron*

*Oil Co. v. Downie*, 873 F.2d 67, 70 (4th Cir. 1989). As the Court explained in *Alexander*,

"[w]hen the United States is a party to the litigation 'judicial control over the evidence in

a case cannot be abdicated to the caprice of executive officers'" because "this would

create a significant separation of powers problem." 186 F.R.D. at 70 (quoting *United*

*States v. Reynolds*, 345 U.S. 1, 9-10 (1953)).  Accordingly, where, as here, "the

government or one of its agencies comes into court . . . it is to be treated in exactly the

same way as any other litigant.  Appointment to office does not confer upon a bureaucrat

the right to decide the rules of the game applicable to his crusades or lawsuits."  186

F.R.D. at 70-71 (internal quotation and citation omitted).

　　　　More specifically, the Supreme Court in *Touhy* specifically noted that the case did

not concern "*a refusal to produce in a prosecution by the United States*,"  340 U.S. at

467-68 & n.6 (emphasis added).  In distinguishing that situation, *Touhy* cited approvingly

to *United States v. Andolschek*, 142 F.2d 503 (2d Cir. 1944), a decision in a criminal case

written by Judge Learned Hand, in which the Second Circuit held that the government

had improperly failed to produce requested information.  Judge Hand explained:

> While we must accept it as lawful for a department of the government to
> suppress documents, even when they will help determine controversies
> between third persons, *we cannot agree that this should include their
> suppression in a criminal prosecution*, founded upon those very dealings
> to which the documents relate, and whose criminality they will, or may,
> tend to exculpate. So far as they directly touch the criminal dealings, the
> prosecution necessarily ends any confidential character the documents
> may possess; it must be conducted in the open, and will lay bare their
> subject matter. *The government must choose; either it must leave the
> transactions in the obscurity from which a trial will draw them, or it must
> expose them fully.* Nor does it seem to us possible to draw any line
> between documents whose contents bears directly upon the criminal
> transactions, and those which may be only indirectly relevant. Not only
> would such a distinction be extremely difficult to apply in practice, but the
> same reasons which forbid suppression in one case forbid it in the other,
> though not, perhaps, quite so imperatively. We hold that the regulation
> should have been read not to exclude the reports here in question.

142 F.3d at 506 (emphasis added); *see also Jencks v. United States,* 353 U.S. 657, 671

(1957) ("[t]he rationale of the criminal cases is that, since the Government which

prosecutes an accused also has the duty to see that justice is done, it is unconscionable to

allow it to undertake prosecution and then invoke its governmental privileges to deprive the accused of anything which might be material to his defense.") (internal quotation and citation omitted).

When taken out of their original civil context and applied in the distinct sphere of criminal prosecutions, *Touhy* regulations pose special challenges. Where as here, the defense has minimal access to discovery and thus minimal knowledge of the factual basis of the government's case against him prior to trial, it may be difficult for a defendant to give an agency the time it requires to go up the chain of command to determine how to comply with a subpoena. Accordingly there was very little time for counsel to seek information about Mr. Sweat from CSOSA at a time when it could still assist him with his defense at trial. Here, counsel detrimentally relied on the government's obligation to disclose *Brady* information. Trial counsel reasonably did not anticipate non-compliance with *Brady*, and thus had to request and obtain a subpoena from the D.C. Superior Court, alert CSOSA to the existence of the subpoena, and serve it on CSOSA all in one day while continuing to participate in the ongoing trial.

Moreover, to the extent the procedural requirements of *Touhy* alert the government in a criminal prosecution to the nature of the defense, they violate due process by failing to provide reciprocal discovery. *See United States v. Bahamonde*, 445 F.3d 1225 (9th Cir. 2006) (rejecting the application of *Touhy* regulations in a criminal case where the defendant sought testimony from a DHS agent). As the court in *Bahamonde* acknowledged, "[i]t is fundamentally unfair to require a defendant to divulge the details of his own case while at the same time subjecting him to the hazard of surprise concerning refutation of the very pieces of evidence which he disclosed to the state."

But even if *Touhy* regulations have some application in the context of a criminal prosecution initiated by the United States, these regulations do not trump and cannot interfere with the mandates of the Constitution. Mr. Edwards has inviolable rights under the Fifth Amendment to Due Process and under the Sixth Amendment to a fair trial, to present a defense. *See Chambers v. Mississippi*, 410 U.S. 284 (1973). And in aid of those rights, he has a right to confront and cross-examine the witnesses against him, and a right to compulsory process. *Pointer v. Texas*, 380 U.S. 400 (1973); *Washington v. Texas*, 388 U.S. 14 (1967).

With respect to this last right, the Supreme Court made clear over thirty years ago that a general assertion of executive privilege does not trump the right to compulsory process and that a trial court in a criminal case has an affirmative and "manifest duty" to protect this right from executive suppression. *See United States v, Nixon*, 418 U.S. 683 (1974).

> When the ground for asserting privilege as to subpoenaed materials sought for use in a criminal trial is based only on the generalized interest in confidentiality, it cannot prevail over the fundamental demands of due process of law in the fair administration of criminal justice. The generalized assertion of privilege must yield to the demonstrated, specific need for evidence in a pending criminal trial.

*Id.* at 713; *see also United States v. Poindexter*, 732 F. Supp. 142 (D.D.C. 1990) (relied on in upholding a subpoena requiring former President Reagan to testify during criminal trial). *See generally* Milton Hirsch, *The Voice of Adjuration: The Sixth Amendment Right to Compulsory Process Fifty Years After United States v. Ex Rel. Touhy v. Ragen*, 30 Fl. St. U. L. Rev. 81 (Fall 2002).[11]

---

[11] *Nixon* set forth the requirements for a subpoena duces tecum pursuant to Federal Rule of Criminal Procedure 17(c), 418 U.S. at 699-700, and the District of Columbia Court of Appeals thereafter adopted this standard for local cases in *Brown v. United States*, 567 A.2d 426 (1989) – a standard that the D.C.

Thus in *Buford v. State*, 282 S.E.2d 134 (Ga. App. 1981), the Georgia Court of Appeals reversed a conviction after the trial court allowed an FBI agent to resist a state court subpoena, crediting the same type of *Touhy* argument made by CSOSA here. The appellate court first rejected the argument that *Touhy* regulations provide any substantive privilege from disclosure. *Id.* at 137. Then, quoting *Nixon*, 418 U.S. at 712, the appellate court observed that "the allowance of the [asserted executive] privilege to withhold evidence that is demonstrably relevant in a criminal trial would cut deeply into the guarantee of due process of law and gravely impair the basic function of the courts." 282 S.E.2d at 137. The court viewed as immaterial the fact that the individual agent "could not be compelled to produce the [requested] items or be held in contempt for merely declining to respond to the subpoena." *Id.* at 138.

> To use Mr. Justice Frankfurter's famous last words in his *Touhy* dissent, to hold that the trial court has jurisdiction to convict a defendant but has no power to marshall the evidence in his defense, or to hold that the Attorney General may forbid his subpoenaed employees to produce material and then ultimately evade production altogether because the wrong person was served "would be to apply a fox-hunting theory of justice that ought to make Bentham's skeleton rattle."

*Id.* Accordingly, the court held that requests for information directed at an FBI agent should be redirected to the attorney general and if the attorney general refused to disclose the requested information and "the material is necessary to due process, the court should [nonetheless] order its disclosure." *Id.* "To say otherwise would be to permit the government head to determine the extent of his privilege. . . and would abdicate judicial control over evidence in the case . . . to the caprice of executive officers." *Id.*

---

Superior Court found Mr. Edwards had met in this case when he requested a subpoena for Mr. Sweat's records from CSOSA.

As in *Buford*, CSOSA's refusal even to entertain Mr. Edwards request for information under the guise of *Touhy* must be rejected and it should be compelled to disclose the subpoenaed records in order to preserve Mr. Edwards' fundamental constitutional rights.

### C.    Sovereign Immunity Does Not Protect CSOSA from Disclosure in this Case.

Likewise, CSOSA has no sovereign immunity challenge to Mr. Edwards' subpoena. CSOSA has never precisely articulated how it believes sovereign immunity provides it with protection against disclosure, but to the extent that it sought to argue that this Court's authority on removal is derivative of the Superior Court's jurisdiction and, in turn, that the Superior Court had no jurisdiction over CSOSA because of sovereign immunity, it faces several barriers. First, it is a basic principle of sovereign immunity that when the sovereign affirmatively invokes the power of a court, it consents to the jurisdiction of that court and waives any immunity: "By voluntarily appearing in the role of suitor [the sovereign] abandons its immunity from suit and subjects itself to the procedure and rules of decision governing the forum which it has sought" *including* rules of discovery. *Guaranty Trust Co. of New York v. United States*, 304 U.S. 126, 134 n.2 (1938) ("The foreign sovereign suing as a plaintiff must give discovery.").

This rule has been reaffirmed many times over in as many contexts. For example, states waive sovereign immunity when they voluntarily initiate legal proceedings in federal courts, *see College Savings Bank v. Florida Prepaid Postsecondary Educ. Expense Bd.*, 527 US 666, 676 (1999); foreign governments waive sovereign immunity when they initiate legal proceedings in United States courts, *National City Bank of New York v. Republic of China*, 348 U.S. 356, 361-62 (1955) (Frankfurter J.); and the United

States waives sovereign immunity when it voluntarily initiates legal proceedings in Admiralty courts. *United States v. Thelka*, 266 U.S. 328 (1924) (Holmes J.) (United States waived sovereign immunity in Admiralty Court where it became a party to damages suit on its own motion).

The same result pertains here. It is the United States that opted to commence a prosecution against Mr. Edwards in D.C. Superior Court. It is the United States that opted to rely on the testimony of Mr. Sweat to satisfy its burden of proof in that prosecution. And it is the United States that potentially possesses critical information about Mr. Sweat that Mr. Edwards would be constitutionally entitled to use in his defense. Under these circumstances, CSOSA, as a United States agency, cannot withhold information from Mr. Edwards under the guise of sovereign immunity. *See National City Bank*, 348 U.S. at 361-62 (condemning an assertion of sovereign immunity by a foreign government who had invoked federal court jurisdiction: "It wants our law, like any other litigant, but it wants our law free from the claims of justice.").

Second, the "derivative jurisdiction" rule that CSOSA relies on was statutorily repealed by 28 U.S.C. § 1441(e). *See Hollis v. Florida State University*, 259 F.3d 1295, 1296 (11th Cir. 2001) (acknowledging abolition of derivative jurisdiction rule); *Nishimoto v. Federman-Bachrach & Assoc.*, 903 F.3d 709, 714 n. 11 (9th Cir. 1990) (same); *Lewis v. Windsor Door Co.*, 926 F.2d 729, 731 n.2 (8th Cir. 1991); *Federal Nat'l Mort. Ass'n v. LeCrone*, 868 F.2d 190, 192 n.4 (6th Cir. 1989); *Beighley v. FDIC*, 868 F.2d 776, 780 (5th Cir. 1989) (same). In short, remand is additionally appropriate in this instance because even if CSOSA had a right to remove under the statute and had not waived this right, it would have nothing to litigate before this Court.

Sovereign immunity is additionally defeated because CSOSA is statutorily obligated to provide the D.C. Superior Court "with such reports to the Superior Court with respect to an individual on probation as the Superior Court may require." *See* D.C. Code § 24-133.  Thus, at least as to CSOSA's obligation to produce information to D.C. Superior Court, Congress has "unequivocally" waived CSOSA's immunity.  *United States v. Nordic Village*, 503 U.S. 30, 33 (2001).

## CONCLUSION

For all the reasons stated above, remand is appropriate; alternatively CSOSA's Motion to Quash should be denied.

Respectfully submitted,

Timothy O'Toole D.C. Bar #
Catharine F. Easterly D.C. Bar # 484537
Special Litigation Division
Public Defender Service
633 Indiana Ave, NW
Washington D.C. 20004
(202) 628-1200